890 F.2d 82
 UNITED STATES of America, Appellant,
v.
UNIT NO. 7 AND UNIT NO. 8 OF SHOP IN the GROVE CONDOMINIUM,
a Condominium, according to the Declaration of Condominium
as recorded in Official Records Book No. 10907, at Page
1432, of the Public Records of Dade County, Florida, and the
amendments thereto as recorded in Official Records Book
10956, Page 304, Public Records of Dade County, Florida;
Located on: Block 14, of Edwards Pent Subdivision,
according to the Plat Book A, at Page 45 of the Public
Records of Dade County, Florida, Locally known as 3310
Virginia Avenue, Miami, Florida, Appellees.
UNITED STATES of America, Appellant,
v.
LOTS 1, 4 AND 5, BLOCK 3, BRUSH CREEK VILLAGE, together with
all that portion of vacated Laney Lane abutting said Lots 4
and 5 in the County of Pitkin, State of Colorado, locally
known as 0250 Medicine Bow Road, Aspen, Colorado, Appellees.
UNITED STATES of America, Appellant,
v.
LOT 1, OF SUNSET HAVEN, according to the Plat thereof
recorded in Plat Book 64 at Page 110, of the Public Records
of Dade County, Florida, locally known as 7335 S.W. 69th
Court, Miami, Florida, 33143, Appellee.
UNITED STATES of America, Appellant,
v.
Stanley Carter KISER, Appellee.
 Nos. 87-2499, 87-2500, 87-2501 and 87-2502.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 10, 1989.
Decided Nov. 21, 1989.
 
 Maury S. Epner, Washington, D.C., for appellant.
 Mark W. Peterson, Washington, D.C., for appellees.
 Before LAY, Chief Judge, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, and BEAM, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 This matter comes to us en banc for reconsideration of the panel's opinion of August 5, 1988.[1] Stanley Carter Kiser was indicted for conducting continuing criminal enterprise in violation of 21 U.S.C. Sec. 848 (1982 & Supp. V 1987). The indictment alleged some of Kiser's property, including two parcels of real estate in Miami, Florida, and one in Aspen, Colorado, should be forfeited under section 848 and 21 U.S.C. Sec. 853 (1982 & Supp. III 1985). After the indictment was filed, the government filed civil forfeiture actions against the property under 21 U.S.C. Sec. 881 (1982 & Supp. II 1984).
 
 
 2
 Warrants were issued by the magistrate, who made an ex parte finding of probable cause. Kiser then sought relief in the district court to release two of the properties from forfeiture in order to transfer them to his attorney in payment of fees and costs for legal representation. Kiser then petitioned this court for a writ of mandamus requesting us to order the district court to stay the criminal prosecution pending determination of his motion to set aside the forfeiture and pay his attorney. A panel of this court directed the district court[2] to
 
 
 3
 promptly * * * hold an adversary hearing on Petitioner's Motion * * *. Judge Vietor shall consider Petitioner's financial condition in order to determine whether Petitioner has assets not subject to forfeiture that could supply a reasonable fee to the counsel he has retained to assist in his defense in the pending criminal prosecution. For the protection of Petitioner's Fifth Amendment privilege of self-incrimination, any examination of Petitioner to determine his financial condition shall be conducted ex parte and in camera by Judge Vietor. If it is determined that Petitioner is without assets not subject to forfeiture from which he could pay the fee of his retained counsel, Judge Vietor shall determine the amount of a reasonable fee for Petitioner's retained counsel in the pending criminal prosecution and shall decide whether Petitioner's motion should be granted to that extent.
 
 
 4
 Kiser v. Vietor, No. 87-2287, slip op. at 2 (8th Cir. Sept. 30, 1987) (order) (Heaney, Arnold, and Bowman, JJ.).
 
 
 5
 Judge Vietor found that the proposed attorney fee contract between Kiser and his retained attorney was reasonable and that Kiser had no other assets not allegedly subject to forfeiture. The court ruled the sixth amendment right of counsel required the motion be granted to the extent the properties were needed to pay his counsel. The government appealed.
 
 
 6
 This court, in an opinion written by Judge Arnold and joined in by Judge McMillian and Chief Judge Lay, affirmed. We pointed out that since no restraining order had been granted we were concerned only with the particular application of the forfeiture statutes and not with their facial constitutionality. Unit No. 7, 853 F.2d at 1448. We held:
 
 
 7
 Due process requires more than allegation and a determination of probable cause that property is the fruit of illegal drug trafficking before the government can place it out of reach of a criminal defendant who needs it to pay the lawyer conducting his defense.
 
 
 8
 * * * But the present case involves more than a deprivation of property simpliciter; it involves a criminal defendant's loss of the only property he has with which to hire a lawyer of his own choice to defend him. So the case involves both the Due Process Clause of the Fifth Amendment and the Assistance of Counsel Clause of the Sixth Amendment.
 
 
 9
 * * *
 
 
 10
 * * * [Kiser] has demonstrated that these particular assets are the only ones with which he can pay his lawyer for assisting in his defense to the government's serious criminal charges. He has a fundamental Sixth Amendment right to defend himself against these charges, and he unquestionably has a Sixth Amendment right (however qualified) to hire private counsel to aid in his defense.
 
 
 11
 Unit No. 7, 853 F.2d at 1149-50.
 
 
 12
 On September 10, 1988, the government filed a petition for rehearing with suggestion for rehearing en banc. This court delayed passing on the suggestion until the Supreme Court decided Caplin & Drysdale, Chartered v. United States, --- U.S. ----, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), and United States v. Monsanto, --- U.S. ----, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). United States v. Unit No. 7 & Unit No. 8, 864 F.2d 1421 (8th Cir.1988). On June 22, 1989, the Supreme Court decided these two cases holding that a defendant's sixth amendment right to counsel is not violated by the pretrial seizure of the defendant's assets under the forfeiture provision of sections 848 and 853. See Caplin, 109 S.Ct. at 2651-56; Monsanto, 109 S.Ct. at 2665-67.
 
 Monsanto observed:
 
 13
 Permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if a conviction occurs, cannot be sanctioned. * * * "[t]he sole purpose of [Sec. 853's] restraining order provision ... is to preserve the status quo * * *."
 
 
 14
 Monsanto, 109 S.Ct. at 2665 (citation omitted).
 
 
 15
 Caplin held that neither the fifth nor sixth amendment rights of a defendant are offended by forfeiture of property which would otherwise be used to pay an attorney. 109 S.Ct. at 2651-57. In Monsanto it was determined that pretrial restraint of such assets is permissible after a showing of probable cause. 109 S.Ct. at 2666-67.
 
 
 16
 We are satisfied under Caplin and Monsanto that the district court's limited order must be vacated. The dissent relates that Kiser is entitled to an adversarial hearing to vindicate his sixth amendment right to use of assets for payment of attorney fees. Caplin clearly decides to the contrary. At oral argument in the en banc rehearing, the defendant raised for the first time the issue reserved in footnote 10 of Monsanto, to-wit: "whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed."[3] Monsanto, 109 S.Ct. at 2666 n. 10. However, this issue is not properly before us. It was not raised before the district court and our previous order of remand did not place this issue before the district court. The criticism of the dissent, that we should consider the issue because it was argued to us, fails to acknowledge that "a federal appellate court will not consider an issue not passed upon below." Stafford v. Ford Motor Co., 790 F.2d 702, 706 (8th Cir.1986) (Bowman, J.).[4]
 
 
 17
 We therefore reverse and vacate the district court opinion and dismiss the appeal.
 
 
 18
 ARNOLD, Circuit Judge, joined by BOWMAN, Circuit Judge, dissenting.
 
 
 19
 The important question presented in this case is what process is due to a criminal defendant who is in danger of losing the only money he has to hire a lawyer because of an ex parte finding of forfeitability. Is a grand-jury indictment or a magistrate's issuance of a civil forfeiture warrant sufficient? Or should there be at least a limited adversary hearing, at which the government would have to show, by analogy to the requirements for obtaining a preliminary injunction, some likelihood of succeeding in its claim of forfeiture? This is the question reserved by the Supreme Court in United States v. Monsanto, --- U.S. ----, 109 S.Ct. 2657, 2666 n. 10, 105 L.Ed.2d 512 (1989). It is the question that was vigorously debated by Court and counsel at the argument before the Court en banc. But it is not the question decided by the Court today. The Court decides only that the due-process issue is not properly before it, though the issue was at the heart of the panel opinion. Thus this case ends[1] with a whimper instead of a bang. We will have to face the due-process issue another day.
 
 
 20
 In order to reach this startling result, the Court radically rewrites the history of this case. It is true that the District Court's opinion was based squarely on the Sixth Amendment. The panel affirmed the District Court, but it did so on a narrower ground--that one's qualified Sixth Amendment right to counsel of his choice cannot be destroyed by forfeiture without some sort of showing at a hearing at which the defendant is present and has a chance to present his side of the case. There was nothing in the least improper about this. A judgment may be affirmed on any ground fairly apparent on the record, see, e.g., Brown v. St. Louis Police Department, 691 F.2d 393 (8th Cir.1982), cert. denied, 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983). And a decision on a narrower, as-applied ground should normally be preferred, as a matter of judicial restraint, to one based on a broader, facial ground.
 
 
 21
 The Court's invocation of the general rule of appellate practice that issues not passed on below will not be considered is quite beside the point in the present procedural context. The point at issue here is being urged by an appellee in support of the judgment of the District Court. It is not being urged by an appellant in an attempt to get that judgment reversed. In Stafford v. Ford Motor Co., 790 F.2d 702, 706 (8th Cir.1986), which the Court cites today, ante at 85, we were dealing with an issue raised for the first time on appeal by the appellant. In that situation, there is normally every reason for the appellate court not to consider the issue. What we have here is the opposite situation: a point raised in defense of the judgment below. We routinely notice such points and affirm judgments in reliance on them. The Court gives no good reason for not doing so in this case.
 
 
 22
 The government petitioned for rehearing en banc. The petition as originally filed did not attack the adversary-hearing holding of the panel in principle. It argued only that if an adversary hearing were required, the government should be given a fair chance to introduce evidence to show its likelihood of success. It said it had not yet had this chance. The hearing held by the District Court, the petition said, was limited to the issues of the reasonableness of Kiser's attorney's fee and the value of any of Kiser's assets not claimed to be forfeitable. The petition asked that the government be given a chance, on remand, to show its likelihood of success, at precisely the kind of adversary hearing that the panel opinion contemplated.[2]
 
 
 23
 As the Court notes, we did not immediately rule on the rehearing petition. We held it pending a Supreme Court decision in Monsanto and its companion case, Caplin & Drysdale v. United States, --- U.S. ----, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). When those cases came down, the government wrote the Clerk of this Court to ask that its petition be granted, and that the District Court's judgment be reversed at once on the authority of the recent Supreme Court opinions.[3] The appellee, Kiser, replied, also by letter, pointing out that the Supreme Court, see footnote 10 of the Monsanto opinion, had not decided the question of the procedure required to forfeit assets needed to pay counsel. The letter defended the panel opinion and asked that the petition for rehearing be denied.
 
 
 24
 The Court then granted the petition for rehearing en banc. It invited (but did not require) the filing of supplemental briefs. The government filed a supplemental brief. It broadened its attack on the panel opinion. It argued not merely that it ought to have a chance to make its showing at an adversary hearing, but that no such hearing is required by the Due Process Clause. Kiser did not file a supplemental brief, but at the argument his lawyer (and counsel for the United States) urged the due-process issues on their merits. No one suggested that the failure of appellee to file a supplemental brief was at all significant. It is incorrect for the Court to state, ante at 84, that the due-process issue was not in the case until the oral argument before the Court en banc.
 
 
 25
 I would agree that the District Court's rationale--that the Sixth Amendment forbids forfeiture of assets needed to hire counsel--cannot stand after Monsanto and Caplin & Drysdale. But the essential question is still open. Can Kiser's property be seized, with no notice or hearing, thus preventing him from hiring his own lawyer, without a post-deprivation hearing held in time to give him effective relief (that is, before the criminal trial for which he needs the lawyer)? The government claims it can effectively take private property, which is explicitly protected by the Fifth Amendment, without any adversary hearing. The panel opinion holds it cannot. The Supreme Court has not decided the issue. We should decide it now, instead of taking refuge behind an artificial reading of the procedural history of this case.
 
 
 26
 Since the Court does not reach the merits, it is not necessary for me to discuss them. I am content to observe that although Monsanto and Caplin & Drysdale may require some changes in the details of the panel opinion's reasoning, the essential basis of the holding is sound. Some special provision might be necessary for government witnesses whose safety would be endangered if they had to testify at the pre-trial adversary hearing contemplated by the panel's approach. But with that possible exception, I do not believe that due process allows property necessary to hire defense counsel to be seized and retained by the government pending trial, without a timely adversary hearing of some kind.
 
 
 27
 I respectfully dissent.
 
 
 
 [1]
 United States v. Unit No. 7 & Unit No. 8, 853 F.2d 1445 (8th Cir.1988), vacated and reh'g granted, 883 F.2d 53 (8th Cir.1989) (en banc)
 
 
 [2]
 The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa
 
 
 [3]
 While Kiser made a general assertion along these lines in his brief before the panel, the essence of the argument was that it was an issue to be addressed in the district court's exercise of equitable jurisdiction, and the entire point of the argument tied this argument with the use of the funds to pay attorneys' fees
 
 
 [4]
 This case serves as a vivid illustration as to why appellate courts should not pass on an issue not raised or tried in the district court. Kiser's oral argument on appeal is ambiguous as to what theory of due process he relies upon: (1) whether an adversarial hearing is necessary to establish probable cause before seizure; or (2) whether subsequent to the seizure the government must assume, in an adversarial proceeding, the burden to show the likelihood of success on the merits of the criminal proceeding; or (3) that the forfeiture of the property is not otherwise improper. If the due process issue is properly raised in the district court, as it still may be, it would then be clear to this court what the contentions were and what evidentiary proofs support those contentions. Suffice it to say no one disputes the fact that the district court heard none of these claims. The dissent seems to raise another theory of due process: a need for an adversarial hearing to determine whether the government can show a likelihood of success on the merits so as to deprive Kiser of his property to retain his own counsel. As indicated, we feel Caplin and Monsanto dispose of this issue and the issue, at least as stated by the dissent, is no longer involved in this case
 
 
 [1]
 Or does it? The Court says the due-process issue "still may be" "properly raised in the district court...." Ante at 84-85 n. 4. So, on remand, Kiser will presumably make to the District Court the argument he thought we were going to decide on this appeal. I hope that he does so, and that the District Court will decide it. Whoever loses will then appeal, and the issue will be right back before this Court
 
 
 [2]
 Although I thought, at the time of the original order directing the District Court to hold a hearing, that one of the purposes of the hearing would be to allow the government to make a sufficient preliminary showing to justify freezing the assets, I recognize that our order requiring the hearing did not so state. I would therefore be willing to acquiesce in giving the government, on remand, the opportunity it asked for in its petition for rehearing
 
 
 [3]
 The government's letter, dated June 30, 1989, makes ironic and interesting reading when compared with the opinion the Court files today. The letter asks us to "return the case to the District Court for a due-process hearing to determine whether there is a substantial likelihood that the government would prevail on the forfeiture of defendant's property"! This is about as far as you can get from saying the due-process issue is not properly before us on this appeal